2021 IL App (1st) 182294-U

SIXTH DIVISION
January 29, 2021

No. 1-18-2294

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 07 CR 12674 |
| | ) | |
| MARCUS FOWLKES, | ) | Honorable Charles P. Burns, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*   The trial court properly denied petitioner leave to file a successive postconviction petition where petitioner failed to meet the cause-and-prejudice test; affirmed.

¶ 2    Petitioner, Marcus Fowlkes, appeals from the trial court's denial of leave to file a successive petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). Petitioner claims that his successive postconviction petition should have been treated as an original postconviction petition because his original postconviction counsel failed to render reasonable assistance of counsel. In the alternative, petitioner argues that he met the

cause-and-prejudice test necessary to file a successive postconviction petition. For the following reasons, we affirm the trial court's denial of defendant's motion for leave to file a successive postconviction petition.

¶ 3                                    I. BACKGROUND

¶ 4     Following a 2009 jury trial, petitioner was convicted of first-degree murder for fatally shooting Kyle Myles following a verbal confrontation in the street. The trial court sentenced petitioner to a term of 48 years in prison.

¶ 5     Evidence at trial showed that there was a physical altercation between petitioner and the victim three days prior to the shooting. On the day of the incident, a witness saw petitioner pull a gun out of his jacket and begin shooting at the victim and a friend, both of whom were unarmed. The witness heard five or six gunshots and saw the victim run and then collapse. Petitioner walked inside the beauty parlor his family owned and came out with another gun. He stood over the victim and fired his gun several more times. He then tossed the gun into a garbage can. Chicago police officers arrived on the scene and arrested petitioner. He was wearing an empty holster under his shirt and an empty .22 caliber revolver was recovered from a nearby garbage can. A loaded .357 revolver and numerous spent cartridges were recovered from inside the beauty parlor.

¶ 6     Petitioner claimed self-defense at trial, testifying that he had been injured by a fallen tree branch the day before the shooting and was limping on the day of the shooting. When he was confronted by the victim and his friend, he began shooting. He stated that he kept shooting because he thought he had missed the victim. He went in to get another gun because the victim "was still standing there," and he thought the victim "was going to rally his guys."

¶ 7    After closing arguments, the jury was instructed on the elements of first-degree murder and the State's burden to prove beyond a reasonable doubt that defendant did not act in self-defense. The jury was instructed that a person is justified in the use of deadly force only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm. The jury was also instructed, by the request of petitioner, on second-degree murder based on an unreasonable belief in self-defense. The jury found petitioner guilty of first-degree murder.

¶ 8    Petitioner filed a motion for a judgment notwithstanding the verdict or alternatively a new trial, contending that his conviction should be reduced to second degree murder based on evidence of serious provocation. The trial court noted that "this was a self-defense case from start to finish" and that the jury was instructed, as defendant had requested, on self-defense and the second-degree murder mitigating factor of unreasonable belief in self-defense. The court noted that petitioner did not ask the jury to be instructed on second-degree murder based on serious provocation and denied the motion.

¶ 9    On direct appeal, defendant argued that the State failed to prove beyond a reasonable doubt that he did not act in self-defense. *People v. Fowlkes*, No. 1-09-0829 (unpublished order under Supreme Court Rule 23). In rejecting this argument, we noted that petitioner kept shooting although the victim's friend had run away and the victim had collapsed. Petitioner then retrieved another gun and shot the victim several more times because he thought he had missed him the first time. *Fowlkes*, No. 1-09-0829, at 11. We concluded that "any rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense but instead acted in disproportionate retaliation." *Id*. We noted that there was no evidence of the victim having a weapon, and thus deadly force was not threatened at the time of the shooting. *Id*. at 12. "Under these circumstances, and the number of shots fired by defendant and the location of the gunshot

wounds he inflicted upon [the victim], it was clearly within the province of the jury to reject defendant's claim that he believed the danger of harm was imminent, that the use of deadly force was necessary, and thus find that he was not acting in self-defense." *Id*.

¶ 10     Petitioner argued in the alternative that his conviction should be reduced to second-degree murder based on the presence of mitigating factors. Petitioner stated that the preponderance of the evidence at trial established his unreasonable belief in his right to self-defense at the time he shot the victim. Petitioner also argued that "simultaneously with his unreasonable belief, he acted under serious provocation when he shot [the victim.]" *Id*. at 12. We noted, however, relying on *People v. Banks*, 227 Ill. App. 3d 462, 474 (1992), that "these two mitigating factors require different frames of mind that cannot exist in the same act." In *Banks*, this court found that a "deliberate act of self-defense would negate inferences of intense passion under provocation." *Id*. Thus, the defendant's second-degree murder theory on appeal, which was provocation, was inconsistent with the theory she advanced at trial, which was an unreasonable belief in self-defense. *Id*.  Relying on that proposition from Banks, we noted that "without deciding, where the provocation, if any, is slight and the retaliation grossly disproportionate, the crime is first degree murder." *Fowlkes*, No. 1-09-0829, at 13. We continued:

> "Moreover, as the trial court noted during the hearing on defendant's motion for a judgment notwithstanding the verdict or alternatively a new trial, although the jury was instructed, as requested, on self-defense and the second degree mitigating factor of unreasonable belief in self-defense, defendant's position at trial was that he acted in self-defense and thus was not guilty of first degree murder. The jury, as the trier of fact, rejected defendant's position. 'In a

case where a claim of perfect self-defense is made, there is no room in the evidence for a finding of second degree murder by the jury.' *People v. Billups*, No. 1-08-1383, *slip op*. at 20 (August 23, 2010)." *Id.*

¶ 11    On May 20, 2011, petitioner, through privately-retained counsel, filed a petition for relief under the Act. Petitioner alleged he was denied his constitutional right to effective assistance of counsel because his trial counsel failed to call petitioner's father to testify that he overheard a man threaten petitioner three days before the shooting. Petitioner also claimed trial counsel was ineffective because he failed to present a jury instruction that would have allowed the jury to find him guilty of second-degree murder based on provocation. Petitioner further argued that appellate counsel rendered ineffective assistance of counsel on direct appeal when he failed to raise trial counsel's ineffectiveness.

¶ 12    Attached to petitioner's petition was an affidavit from postconviction counsel stating that he was retained by petitioner's family to file the postconviction petition but had not yet read the entire trial record. The affidavit of William Fowlkes, petitioner's father, was also attached to the petition. Fowlkes stated that he told trial counsel that a few days before the shooting he overheard a conversation between petitioner and an unnamed "man and his son," who were in a car. He heard the man tell petitioner, "you're dead," and the man and his son then drove away. Fowlkes was present at petitioner's trial but was not called to testify.

¶ 13    The circuit court concluded that the allegations in petitioner's postconviction petition were frivolous and patently without merit. The court found that the evidence at trial did not support petitioner's contention that he was in fear of his life when he shot the victim, and that the petitioner was not threatened with deadly force at the time of the shooting. The court also noted that petitioner's actions were grossly disproportionate to any provocation by the victim. In

rejecting petitioner's claim that counsel was ineffective for failing to ask for a jury instruction on serious provocation, the court stated that petitioner's actions did not constitute second-degree murder based on provocation. Therefore, by law, petitioner was not entitled to a jury instruction for that offense. The court concluded that trial counsel was not ineffective for failing to request the jury instruction on second-degree murder based on provocation.

¶ 14 In addition, the court found that trial counsel was not ineffective for failing to call Fowlkes as a witness. The court noted that the jury was aware of the alleged death threat from petitioner's testimony, and thus, there was no reasonable probability that the verdict would have been different if Fowlkes had testified. Based on these findings, the court found that appellate counsel was not ineffective for failing to argue on appeal that trial counsel was ineffective.

¶ 15 Petitioner appealed the summary dismissal of his postconviction petition. He contended that the circuit court erred in dismissing his petition because it raised claims that he was deprived of his constitutional right to effective assistance of counsel. This court, before addressing the merits of petitioner's appeal, stated:

> "As a threshold matter, we note that section 122-2(b) of the Act provides
> that a post-conviction proceeding is commenced when a prisoner files a petition
> that is 'verified by affidavit.' 725 ILCS 5/122-1(b) (West 2010)). The defendant's
> affidavit verifies that the allegations in his petition are being brought truthfully
> and in good faith. *People v. Collins*, 202 Ill. 2d 59, 67 (2002). Where a
> postconviction petition does not comply with the pleading requirements of the
> Act, summary dismissal of the petition by the circuit court is proper. *People v.*
> *Delton*, 227 Ill. 2d 247, 258 (2008); *People v. Carr*, 407 Ill. App. 3d 513, 515
> (2011).

Here, the record reveals that defendant did not provide an affidavit verifying the truthfulness of the allegations in his petition as required by section 122-1(b) of the Act. Defendant's failure to meet the pleading requirements of the Act was 'fatal' to his post-conviction petition and justified the circuit court's summary dismissal of his petition. *Delton*, 227 Ill. 2d at 255; *Collins*, 202 Ill. 2d at 66." *People v. Fowlkes*, 2012 IL App (1st) 112541-U, ¶¶ 10-11 (unpublished order under Supreme Court Rule 23).

¶ 16    This court then addressed petitioner's claims of ineffective assistance of counsel. We found that the record rebutted petitioner's claim that trial counsel rendered ineffective assistance of counsel when he failed to call petitioner's father as a witness because Fowlkes's proposed testimony had already been presented to the jury by petitioner and petitioner's girlfriend. The additional testimony would not have changed the outcome of trial and therefore petitioner was not prejudiced by counsel's decision not to call Fowlkes. *Id*. ¶ 13.

¶ 17    In response to petitioner's argument that trial counsel was ineffective for failing to submit a jury instruction which would have given the jury the option of finding him guilty of second-degree murder based on provocation, we noted that petitioner's brief merely stated that this claim was alleged in his petition and did not present any argument whatsoever or any citations to relevant legal authority in support of his claim. *Id*. ¶ 14. We found that such a bald contention did not rise to the level of a cohesive argument of the issue presented, supported by relevant authority, and thus the issue was forfeited on appeal. *Id*. ¶ 15.

¶ 18    On April 18, 2018, petitioner, through retained counsel, filed a motion for leave to file a petition "either as an original petition or as a successive postconviction petition." In that motion, petitioner argued that he was denied reasonable assistance of postconviction counsel due to

counsel's failure to provide petitioner's affidavit verifying the veracity of the first postconviction petition. Petitioner also contended that our order affirming the circuit court's dismissal of petitioner's first postconviction petition was in error because this court stated that a petition can be dismissed as frivolous or patently without merit for failing to be verified by the petitioner, and that proposition has now been overruled. Petitioner's final claim was that this court's determination on direct appeal that because petitioner raised a claim of self-defense at trial, he could not also argue that his conviction should be reduced to second-degree murder, was in error based on a subsequent Illinois Supreme Court decision in *People v. Washington*, 2012 IL 110283.

¶ 19    In a written order, the circuit court denied petitioner leave to file a successive postconviction petition. The court stated that petitioner's arguments that the petition should be treated as an initial petition or that he otherwise established cause and prejudice need not be addressed because the underlying claim was meritless. The court recognized that the holding in *Washington* was that when the evidence supports the giving of a jury instruction of self-defense, an instruction on second-degree murder based on an unreasonable belief in self-defense must be given as a mandatory counterpart. *Washington*, 2012 IL 110283, ¶ 56.

¶ 20    The court noted that in this case, the court did give an instruction on second-degree murder based on an unreasonable belief in self-defense, so *Washington* had no bearing on petitioner's case. The court found that the instructions given did not run afoul of the rule from *Washington*, and petitioner was not deprived of an opportunity for the jury to determine whether he had an unreasonable subjective belief in self-defense.

¶ 21    The circuit court continued:

"In part, the appellate court appeared to reason that [petitioner's] trial position of self-defense precluded a finding of second degree murder. *Fowlkes*, No. 1-09-0829. That proposition does seem contrary to *Washington* and the appellate decision cited was vacated based on *Washington*. See *People v. Billups*, 404 Ill. App. 3d 1 (2010) (vacated by 2012 Ill. LEXIS 349). But, this aspect of the appellate court's opinion was not the sole basis for its decision on the issue."

¶ 22 The circuit court stated that even if the appellate court's decision was "flawed, it nevertheless is the actual decision on the issue." The proper forum to seek review of that issue was the Illinois Supreme Court, but petitioner did not seek leave to appeal to the Illinois Supreme Court. As a result, the circuit court found, the issue was barred by *res judicata*. Finally, the court noted that a rational trier of fact could have found that petitioner did not have a subjective belief, reasonable or unreasonable, in self-defense, and was therefore guilty of first-degree murder. Petitioner now appeals.

¶ 23                                    II. ANALYSIS

¶ 24 On appeal, petitioner contends that the circuit court erred in failing to treat his successive postconviction petition as an original postconviction petition because the first postconviction attorney failed to render reasonable assistance of counsel. In the alternative, petitioner argues that the trial court erred in denying his motion to file a successive postconviction petition because he satisfied the cause-and-prejudice test where "a later decided Supreme Court case eviscerates a major reason for the denial of the first petition." Petitioner also argues that this court's reliance on direct appeal upon "a subsequently overruled case on [*sic*] also establishes cause and prejudice for the filing of a successive postconviction petition."

¶ 25    The Act provides a method by which a person under a criminal sentence can assert that his conviction was the result of a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1 *et seq*. (West 2018). The Act contemplates the filing of only one postconviction petition and "expressly provides that any claim of substantial denial of constitutional rights not raised in the original or amended petition is waived." *People v. Guerrero*, 2020 IL 112020, ¶ 15; 725 ILCS 5/122-3 (West 2018). Consequently, a defendant faces immense procedural default hurdles when bringing a successive postconviction petition. *People v. Davis*, 2014 IL 115595, ¶ 14. Because successive petitions impede the finality of criminal litigation, these hurdles are lowered only in very limited circumstances. *Id*.

¶ 26    Section 122-1(f) of the Act permits a defendant to file a successive postconviction petition with leave of court. 725 ILCS 5/122-1(f) (West 2018). To obtain such leave, the defendant must demonstrate cause for failing to raise the claim in his initial postconviction petition and prejudice to him resulting from that failure. *Id*. Section 122-1(f) further states:

> "For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial postconviction proceeding; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his initial postconviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id*.

¶ 27    The burden to obtain leave to file a successive postconviction petition is on the defendant. *Edwards*, 2012 IL 111711, ¶ 24. In order to meet the cause-and-prejudice requirement, a defendant must allege facts demonstrating cause and prejudice and must submit

sufficient documentation to allow the trial court to determine that cause and prejudice exist. *People v. Smith*, 2014 IL 115946, ¶¶ 34-35. Our supreme court has stated:

> "Leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Id.* ¶ 35.

¶ 28    In determining whether the defendant has met this burden, the court must take all well-pleaded facts and supporting affidavits as true. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25. We review the trial court's denial of petitioner's motion for leave to file a successive postconviction petition *de novo*. *Id.*

¶ 29                    A. Original or Successive Postconviction Petition

¶ 30    Petitioner's first contention is that he was denied reasonable assistance of counsel during his first postconviction proceedings, and thus his successive postconviction petition should be treated as an original postconviction petition. As our supreme court has noted, although there is a sixth amendment right to counsel at trial, "the right has not been found to apply in post-conviction proceedings." *People v. Flores*, 153 Ill. 2d 264, 276 (1992); see also *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003). "The postconviction process does not provide a forum by which a defendant may challenge the conduct of counsel at an earlier postconviction proceeding." *People v. Szabo*, 186 Ill. 2d 19, 26 (1999). In Illinois, " 'the right to counsel at post-conviction proceedings is a matter of legislative grace and favor which may be altered by the legislature at will.' " *People v. Porter*, 122 Ill. 2d 64, 72 (1988) (quoting *People v. Ward*, 124 Ill. App. 3d 974, 978 (1984)).

11

¶ 31 "Because the right to counsel in post-conviction proceedings is derived from statute rather than the Federal or State Constitutions, post-conviction petitioners are guaranteed only the level of assistance provided for the by the Act." *Flores*, 153 Ill. 2d at 276. That assistance has been defined by our supreme court to mean a "reasonable" level of assistance. *Id*. "Therefore, because the Act was designed to address only deprivations of constitutional magnitude, a petitioner's claim of ineffective assistance of post-conviction counsel at a prior post-conviction proceeding does not present a basis upon which relief may be granted under the Act." *Id*.; see also *People v. Jones*, 321 Ill. App. 3d 515, 519 (2001) (*Flores* pointed out that the Act provides a forum to address claims of a constitutional magnitude that occurred in the proceeding that resulted in the petitioner's conviction). Our supreme court continued:

> "We note, additionally, that the Act expressly provides that the petitioner may assert claims of constitutional magnitude which occurred 'in the proceeding which resulted in [the petitioner's] conviction.' The purpose of the post-conviction proceeding is to permit inquiry into the constitutional issues involved in the 'original' proceeding. The Act does not, however, provide a forum to test the propriety of conduct at an earlier post-conviction proceeding. Thus, where a petitioner files a second or subsequent post-conviction petition where he claims ineffective assistance in his first post-conviction proceeding, consideration of those claims is beyond the scope of the Act." Citations omitted. *Id*. at 277.

¶ 32 Accordingly, we reject petitioner's claim that his successive postconviction petition should be treated as an original postconviction petition because of postconviction counsel's unreasonable assistance of counsel. Petitioner's reliance on *People v. Warren*, 2016 IL App (1st) 090884-C, does not persuade us otherwise.

¶ 33    In *Warren,* the defendant filed a postconviction petition with the assistance of counsel. *Id.* ¶ 3. The petition alleged that the defendant was actually innocent, but counsel did not attach affidavits or other evidence to support the argument. *Id.* Counsel told the court that, while he knew potential witnesses who could potentially substantiate the defendant's claim of actual innocence, he did not secure signatures from them in order to prepare affidavits. *Id.* The trial court dismissed the petition in part for a lack of evidentiary support and the court on appeal affirmed. *Id.*

¶ 34    Ten years later, the defendant sought leave to file a second postconviction petition, which again raised his claim of actual innocence. *Id.* ¶ 4. This time, the defendant attached four affidavits – some of which appeared to have been drafted around the time of his first postconviction petition, but were not signed or notarized until years later. *Id.* The trial court found that the defendant failed to state a claim of actual innocence because the affidavits did not constitute newly discovered evidence. *Id.* The appellate court affirmed the judgment in 2011. *Id.* ¶ 5.

¶ 35    In a subsequent supervisory order, the Illinois Supreme Court directed the appellate court to vacate the 2011 decision and to reconsider it in light of a recent case clarifying the standards applicable to actual-innocence claims raised in successive postconviction petitions. *Id.* In 2013, the appellate court again affirmed the dismissal of the defendant's successive petition because the defendant had not supported the petition with newly discovered evidence. *Id.*

¶ 36    In 2015, the Illinois Supreme Court issued another supervisory order directing the appellate court to vacate the 2013 order and to reconsider judgment in light of a recent case, which applied retroactively and held that mandatory sentences of natural life without parole for

defendants under the age of 18 violate the eighth amendment of the United States Constitution. *Id.* ¶ 6.

¶ 37    The appellate court then vacated its judgment, vacated the defendant's mandatory life-without-parole sentence, which was imposed when the defendant was 17 years old, and remanded the case for resentencing. *Id.* ¶ 7. This court stated, "[w]e also reverse the trial court's order denying defendant leave to file his successive postconviction petition because defendant established a colorable claim of actual innocence justifying further proceedings on his successive postconviction petition." *Id.*

¶ 38    As is evident, the procedural posture of *Warren* was considerably different from that of this case. In *Warren*, the successive postconviction petition established a colorable claim of actual innocence. Making a showing of actual innocence is a second basis, established by the courts, on which a defendant can seek leave to file a successive postconviction petition. *Edwards*, 2012 IL 111711, ¶ 23; *People v. Ortiz*, 235 Ill. 2d 319, 333 (2000) ("[d]efendant is not precluded from raising multiple claims of actual innocence where each claim is supported by newly discovered evidence"). Here, petitioner has not alleged a claim of actual innocence, but rather is attempting to relitigate the basis for the dismissal of his first postconviction petition.

¶ 39                    B. Verification Affidavit

¶ 40    As petitioner notes, when this court issued its decision on appeal from his original postconviction petition, we stated as an initial matter that petitioner failed to attach a verification affidavit to his original postconviction petition. We relied on *People v. Delton*, 227 Ill. 2d 247 (2008), and *People v. Carr*, 407 Ill. App. 3d 513 (2011), for the proposition that a postconviction petition should be summarily dismissed where it is not verified by the petitioner. These cases

14

were subsequently overruled by *People v. Hommerson*, 2014 IL 115638, ¶ 9, which held that a petition cannot be summarily dismissed at the first stage for lack of a verification affidavit.

¶ 41    Petitioner contends that because we relied on case law that has since been overruled, he has met the cause-and-prejudice test for filing a successive postconviction petition. This is simply not a recognizable claim under the Act. Petitioner does not cite to any case law, and we cannot find any, that stands for the proposition that if any case relied upon in postconviction proceedings is overruled, the cause-and-prejudice test is met and a successive postconviction petition can be filed.

¶ 42    Rather, in order to be granted leave to file a successive postconviction petition, the petitioner must show cause by identifying an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceeding, and must show prejudice by demonstrating that the specific claim "so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018). Here, petitioner fails to identify the claim that he was unable to raise because of this court's citation to case law that has since been overruled, and fails to identify how such claim so infected the trial that the resulting conviction or sentence violated due process. Accordingly, we find that petitioner failed to meet his burden to obtain leave to file a successive postconviction petition by merely identifying an overruled case cited to on appeal from the circuit court's summary dismissal of his original postconviction petition. *Edwards*, 2012 IL 111711, ¶ 24 (burden to obtain leave to file a successive postconviction petition is on the defendant); *Smith*, 2014 IL 115946, ¶¶ 34-35 (in order to meet the cause-and-prejudice requirement, a defendant must allege facts demonstrating cause and prejudice and must submit sufficient documentation to allow the trial court to determine that cause and prejudice exist).

¶ 43    Moreover, while this court cited to cases that have now been overruled for the proposition that the failure to verify a postconviction petition warrants summary dismissal, we nevertheless addressed the merits of petitioner's postconviction claims on appeal.

¶ 44    In its written order, the trial court concluded that the allegations in petitioner's postconviction petition were frivolous and patently without merit because the evidence at trial did not support his contention that he was in fear of his life when he shot the victim, and that petitioner was not threatened with deadly force at the time of the shooting. The court also noted that petitioner's actions were grossly disproportionate to any provocation by the victim. It found that petitioner's actions did not constitute second-degree murder, and that petitioner was not entitled to an instruction for that offense. The court also found that trial counsel was not ineffective for failing to call William Fowlkes as a witness.

¶ 45    On appeal from that order, we found that the record rebutted petitioner's claim that trial counsel rendered ineffective assistance of counsel when he failed to call petitioner's father as a witness because his proposed testimony had already been presented to the jury by petitioner and petitioner's girlfriend. The additional testimony would not have changed the outcome of trial and therefore petitioner was not prejudiced by counsel's decision not to call Fowlkes. *Id.* ¶ 13.

¶ 46    Accordingly, where the circuit court did not summarily dismiss petitioner's original postconviction petition on the basis that that it lacked a verification affidavit, and where our affirmance of the dismissal of the postconviction proceeding was not based on the fact that it lacked a verification affidavit, petitioner cannot show prejudice.

¶ 47                      C. Second-Degree Murder

¶ 48    Petitioner's final contention is that he established cause and prejudice where he alleged in his successive postconviction petition that this court's failure on direct appeal to consider his

claim of second-degree murder based on an unreasonable belief in self-defense violated his fifth amendment rights. Petitioner stated in his successive postconviction petition that "[t]he failure to consider the lesser included offense [of second-degree murder by an unreasonable belief in self-defense] deprived him of his fifth amendment right to due process." In support of this claim, petitioner cited to *Beck v. Alabama*, 447 U.S. 625, 635 (1980), which held that a defendant is entitled to a lesser-included offense instruction where the evidence warrants it.

¶ 49    In the case at bar, however, defense counsel requested and received jury instructions for both the affirmative defense of self-defense and the offense of second-degree murder based upon an unreasonable belief in self-defense. Self-defense is an affirmative defense, and once it is raised, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense (in this case, first-degree murder). *People v. Gray*, 2017 IL 20958, ¶ 50. Self-defense includes the following elements: (1) unlawful force threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of the force applied, and (6) the beliefs of the person threatened were objectively reasonable. *Id*. If the State negates any one of these elements, the defendant's claim of self-defense necessarily fails. *Id*.

¶ 50    Second-degree murder based on an unreasonable belief in self-defense, on the other hand, is when a defendant commits first-degree murder, but at the time of the killing he unreasonably believes the circumstances to be such that, if they existed, would justify or exonerate the killing as self-defense. *People v. Romero*, 387 Ill. App. 3d 954, 964 (2008).

¶ 51    The jury found defendant guilty of first-degree murder, rejecting his affirmative defense of self-defense and his theory of second-degree murder based on the mitigating factor of an unreasonable belief in self-defense. Accordingly, to the extent petitioner is arguing that his fifth amendment right to due process was violated by the trial court's failure to consider second-degree murder, that argument is wholly without merit where he requested, and received, a jury instruction on second-degree murder based on an unreasonable belief in self-defense.

¶ 52    To the extent that petitioner is arguing that he established cause and prejudice because we cited to a now-overruled case in our decision affirming his conviction of first-degree murder, we also find that argument to be without merit. As discussed above, cause and prejudice is shown by identifying an objective factor that impeded a petitioner's ability to raise a specific claim during his initial postconviction proceeding, and demonstrating that the specific claim "so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018). Here, petitioner has not done that.

¶ 53    On direct appeal, defendant argued that the State failed to prove beyond a reasonable doubt that he did not act in self-defense. *People v. Fowlkes*, No. 1-09-0829 (unpublished order under Supreme Court Rule 23). In rejecting that argument, we noted that petitioner kept shooting although the victim's friend had run away, and that petitioner retrieved another gun and shot the victim several more times because he thought he had missed. *Fowlkes*, No. 1-09-0829, at 11. We concluded that "any rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense but instead acted in disproportionate retaliation." *Id*. We noted that there was no evidence of the victim having a weapon, and thus deadly force was not threatened at the time of the shooting. *Id*. at 12. "Under these circumstances, and the number of shots fired by defendant and the location of the gunshot wounds he inflicted upon [the victim], it

18

was clearly within the province of the jury to reject defendant's claim that he believed the danger of harm was imminent, that the use of deadly force was necessary, and thus find that he was not acting in self-defense." *Id*.

¶ 54    Petitioner argued in the alternative that his conviction should be reduced to second-degree murder based on the presence of a mitigating factor. Petitioner argued that the preponderance of the evidence at trial established his unreasonable belief in his right to self-defense at the time he shot the victim. In response to that argument, we stated in part:

> "[A]s the trial court noted during the hearing on defendant's motion for a
> judgment notwithstanding the verdict or alternatively a new trial, although the
> jury was instructed, as requested, on self-defense and the second degree
> mitigating factor of unreasonable belief in self-defense, defendant's position at
> trial was that he acted in self-defense and thus was not guilty of first degree
> murder. The jury, as the trier of fact, rejected defendant's position. 'In a case
> where a claim of perfect self-defense is made, there is no room in the evidence for
> a finding of second degree murder by the jury.' *People v. Billups*, No. 1-08-1383,
> slip op. at 20 (August 23, 2010)." *Id*.

¶ 55    Two years later, in *People v. Washington*, the Illinois Supreme Court, overruling *Billups*, held that when the evidence supports the giving of a jury instruction on self-defense, an instruction on second-degree murder based upon an unreasonable belief in self-defense must also be given. 2012 IL 110283, ¶ 56. The court found that "[a] failure to do so deprives the jury of the ability to make a factual determination as to whether the defendant had a subjective belief in the necessity for the use of force in self-defense but that belief was unreasonable." *Id*. The failure of a trial court to instruct the jury on second-degree murder where the court has given an instruction

on self-defense is not subject to automatic reversal, but rather if it is demonstrated that the result of the trial would not have been different had the jury been properly instructed, such an error is deemed harmless. *Id*. ¶¶ 59-60.

¶ 56    We reiterate that petitioner in this case *did* receive a jury instruction for second-degree murder based on an unreasonable belief in self-defense, and therefore petitioner's claim of a fifth amendment due process violation is without merit. Moreover, while we quoted *Billups* in support of our proposition that we were unpersuaded by petitioner's claims that his first-degree murder conviction should be reduced to second-degree murder on appeal, we also noted that there was no evidence of the victim having a weapon, and thus deadly force was not threatened at the time of the shooting. *Fowlkes*, No. 1-09-0829, at 12.

¶ 57    We also conclude that the evidence that petitioner was guilty of first-degree murder, and not merely second-degree murder, was overwhelming. It is the defendant's burden to prove, by a preponderance of the evidence, that at the time of the killing, petitioner believed the circumstances to be such that, if they existed, would justify or exonerate the killing. 720 ILCS 5/9-2(a)(2) (West 2018). Petitioner testified that he shot the victim because of an altercation that he had three days earlier with the victim, and the fact that the victim had said "you're dead," after that altercation. Petitioner also testified that he went inside a beauty parlor to retrieve a new gun and fired several more shots at the victim after he had collapsed because he thought he had missed the victim and did not want the victim to "rally" his friends. This testimony overwhelmingly supports a conviction of first-degree murder and does not support a finding of second-degree murder based on an unreasonable belief in self-defense. Believing that the unarmed victim might rally his friends does not prove his unreasonable belief in circumstances that would have legally justified his acts. See 720 ILCS 5/9-2(a)(2) (West 2018).

¶ 58    Accordingly, petitioner's claim here is meritless and the circuit court was justified in denying petitioner leave to file a successive postconviction petition. *Smith*, 2014 IL 115946, ¶ 35 (leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings).

¶ 59                                III. CONCLUSION

¶ 60    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 61    Affirmed.